(No. 3055—

GEORGE B. RICHARDSON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 12, 1944.*

WEILEPP & WILSON, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR AND C. ARTHUR NEBEL, Assistant Attorneys General, for respondent.

ECKERT, J.

On October 29, 1932, claimant and respondent entered into a contract for the construction of State Bond Issue Route No. 177, Federal Aid Project No. E-223, Section 109-B, Washington County, Illinois, at a cost of $17,325.50. The improvement included the construction of one reinforced concrete deck girder bridge and the widening of a second bridge. On February 24, 1933, while the claimant was engaged in the performance of his contract, he was notified by the respondent to suspend immediately all operations under the contract. On September 7, 1933, the respondent requested claimant to submit all bills for work which had been completed, including extras. In accordance with this request, claimant submitted fifteen bills, totalling $6,234.12. Claimant now seeks an award in that amount for damages allegedly sustained by respondent's failure to allow claimant to complete his contract.

On June 18, 1935, claimant was notified by the Department of Public Works and Buildings, Division of Highways, to proceed with the completion of the contract. Following receipt of this notice, on June 25, 1935, claimant wrote to the Chief Highway Engineer of the Division of Highways stating:

". . . In view of the fact that the cost of doing business is considerably greater now than when the work was ordered discontinued, I wish to request a release from this contract, and also respectfully request permission to bring suit before the Court of Claims for any items of extra bills arising from the stoppage of work, which you may not see fit to allow or are not authorized to allow in this connection."

Under date of July 16, 1935, the Engineer of Construction replied to the above letter as follows:

"This acknowledges your letter of June 25th addressed to Mr. Lieberman. I have discussed this matter with Mr. Lieberman, and we are arranging for a formal annullment of this contract, bearing in mind, of course, the last paragraph of your letter which refers to your request to bring suit before the Court of Claims for certain extras which were incurred on account of shutting down of this job."

Under date of August 20, 1935, after submitting to claimant a supplemental agreement, C. M. Hathaway, Engineer of Construction, in a letter to claimant stated:

"We understand that the signing of this supplementary agreement does not in any way prejudice your application to file a claim for alleged losses due to the closing down of the contract in the manner as ordered, and we likewise understand that the signing of this supplementary agreement should not in any way prejudice the claim itself."

On August 26, 1935, claimant and respondent executed the supplementary agreement, which, in substance, relieved claimant from the completion of the work remaining undone under the terms of the original contract, and which provided in part as follows:

"For and in consideration of the mutual interest of the interested parties, it is hereby mutually agreed that the above mentioned contract be modified by striking from said contract certain portions of the work hereinafter described."

The Standard Specifications for Road and Bridge Construction, adopted by the Department of Public Works and Buildings of the State of Illinois on January 2, 1932, and forming a part of the original contract, provide in part as follows:

"Whenever the improvement provided for by the contract shall have been completely performed on the part of the Contractor, and all parts of the work have been approved by the Engineer and accepted by the Department, a final estimate showing the value of the work will be prepared by the Engineer as soon as the necessary measurements and computations can be made, all prior estimates upon which payments have been made being approximate only and subject to the correction in the final payment. The amount of this estimate, less any sums that have been deducted or retained under the provisions of the contract, will be paid to the Contractor as soon as practicable after

the final acceptance, provided the Contractor has furnished to the Department satisfactory evidence that all sums of money due for any labor, materials, apparatus, fixtures, or machinery furnished for the purpose of such improvement have been paid or that the person or persons to whom. the same may respectively be due have consented to such final payment.

"The acceptance by the Contractor of the last payment as aforesaid shall operate as and shall be a release to the Department from all claims or liability under this contract for anything done or furnished or relating to the work under this contract, or for any act or neglect of said Department relating to or connected with this contract."

A final estimate was prepared by the Department of Public Works and Buildings pursuant to this provision; such final payment estimate for $681.54 was scheduled for payment to claimant; on September 23, 1935, the Auditor issued State Warrant No. 154620, in the amount of $681.54 payable to claimant; this warrant was sent to claimant, was received, accepted, and deposited for payment by claimant, and was paid by the Auditor of Public Accounts as of September 29, 1935.

It is the claimant's contention that such payment is not a defense to this claim; that the release provisions of the original contract are not applicable because of the execution of the supplemental contract, and because of the correspondence between the claimant and respondent which preceded its execution. There is nothing in the correspondence, however, to indicate an agreement upon the part of the respondent to waive any provision of the original contract. The correspondence merely stated that the signing of the supplemental agreement would not in any way prejudice the claim. It has not done so, and therefore it is not necessary to consider the question of the authority of C. M. Hathaway, Engineer of Construction, or of Ernest Lieberman, Chief Highway Engineer, to make such an agreement. It is to be noted, however, that neither Hathaway nor Lieberman was the

Director of the Department of Public Works and Buildings, and that neither can exercise the power of the Director of the Department to contract on behalf of the State of Illinois. (*L. B. Strandberg & Son Co.* vs. *State,* opinion filed September 14, 1943.)

The supplementary agreement also fails to sustain claimant's contention. That agreement modified the original contract only by striking the items of work which claimant had not completed. Otherwise the original contract remained in full force and effect. It contains no waiver of the respondent's defense of final payment. The execution of the supplemental contract was for the benefit and relief of the claimant, and was a modification, limited and specific.

Claimant relies upon the case of *Moore Brothers Construction Company* vs. *State,* 10 C. C. R. 625, a suit arising out of the same construction in which claimant was engaged. There, however, no question of final payment was raised or considered by the court in the determination of the case.

From the record here it appears that final payment was tendered and accepted by claimant. The specifications forming a part of the contract provided that acceptance of final payment should be a release of all claims and liability. Claimant's acceptance of final payment thus constituted a full release to the respondent. (*Henkel Construction Co.* vs. *State,* 10 C. C. R. 538; *L. B. Strandberg & Son Co.* vs. *State,* supra.)

Claim dismissed.